IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOE NATHAN JAMES, JR. <br> AIS 0000Z610, <br><br> Plaintiff, <br><br> v. <br><br> STEVE MARSHALL, <br> Attorney General of Alabama, *et al.*, <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIV. ACT. NO. 1:22-cv-285-TFM-N <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's request for preliminary injunction. *See* Doc. 1. In the motion, Plaintiff requests the Court enter a preliminary injunction against Defendant to stay his scheduled execution. Defendants, in response to the Court's order, filed a joint objection to the preliminary injunction request. *See* Doc. 5. The motion is ripe for the Court's review. After consideration of the motion and response, the Court **DENIES** the motion for preliminary injunction.

**I.   PARTIES AND JURISDICTION**

Plaintiff is Joe Nathan James, Jr. ("Plaintiff" or "James"), an Alabama Inmate whose execution is set for July 28, 2022. He filed a complaint pursuant to 42 U.S.C. § 1983 against Defendant Steve Marshall in his official capacity as the Attorney General of the State of Alabama, Terry Raybon as the Warden of Holman prison, and John Hamm as the Commissioner of the Alabama Department of Corrections. The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Capital Litigation History

The history of the crime is discussed in great length in the September 30, 2014 opinion issued in James' habeas appeal. *See James v. Culliver*, Civ. Act. No. 10-S-2929, 2014 WL 4926178, 2014 U.S. Dist. LEXIS 139696 (N.D. Ala. Sept. 30, 2014). In short summary here, James was convicted of murdering his former girlfriend, Faith Hall, after breaking into the apartment where she was located and shooting her several times in the head, chest, and abdomen. He was tried twice and found guilty both times. The first conviction was reversed due to the judicial error in the admission of certain evidence. However, after retrial, he was again convicted of capital murder on June 16, 1999. The jury then returned a sentencing verdict recommendation by unanimous vote that James be sentenced to death. On July 9, 1999, the trial judge conducted the formal sentencing hearing, adopted the sentencing recommendation, and sentenced James to death. James appealed the second conviction and sentence, which were affirmed by the Alabama Court of Criminal Appeals on April 28, 2000. *See James v. State*, 788 So. 2d 185 (Ala. Crim. App. 2000). The Alabama Supreme Court denied certiorari on December 15, 2000, and the United States Supreme Court did the same on May 21, 2001. *See Ex parte James*, No. 1991959, 2000 Ala. LEXIS 1511 (Ala. Dec. 15, 2000); *James v. Alabama*, 532 U.S. 1040, 121 S. Ct. 2005, 149 L. Ed. 2d 1007 (2001).

On May 7, 2002, James then commenced collateral review proceedings in the state system under Rule 32 of the Alabama Rules of Criminal Procedure. He was represented by counsel through these proceedings. The Court entered a final order denying post-conviction relief on October 28, 2004. James appealed the ruling to the Alabama Court of Criminal Appeals, which affirmed. *See James v. State*, 61 So. 3d 332 (Ala. Crim. App. 2006). The Alabama Supreme Court

reversed and remanded the decision for additional proceedings to develop and review the issue of the ineffective assistance of counsel claims. *Ex parte James*, 61 So. 3d 352, 356 (Ala. 2009). Following remand, the Alabama Court of Criminal Appeals again affirmed the denial of the claims from the Rule 32 petition and denied the application for a rehearing. *See James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010). The Supreme Court of Alabama denied the petition for writ of certiorari on October 15, 2010 without opinion.

On October 29, 2010, James filed his federal habeas petition in the Northern District of Alabama and amended the petition on December 31, 2010. *See James v. Culliver*, Civ. Act. No. 10-S-2929, generally. The same counsel served as counsel in this proceeding. After careful review and with a detailed opinion, on September 30, 2014, the court denied his habeas petition and dismissed the petition. *Id.*, 2014 WL 4926178, 2014 U.S. Dist. LEXIS 139696. James' appeal of that judgment was affirmed by the Eleventh Circuit, *James v. Warden*, 957 F.3d 1184 (11th Cir. 2020), and his petition for writ of certiorari was denied by the United States Supreme Court on March 1, 2021. *James v. Raybon*, 141 S. Ct. 1463, 209 L. Ed. 2d 180 (2021). As a result, his conviction and sentence are final because he completed the direct appeal, state post-conviction review, and federal habeas review.

On April 12, 2022, proceeding *pro se*, James filed a second and successive petition for writ of habeas corpus in this Court, which was dismissed for lack of jurisdiction as an unauthorized successive petition. *James v. Raybon*, Civ. Act. No. 1:22-cv-152-JB, 2022 U.S. Dist. LEXIS 113260, 2022 WL 2308917 (S.D. Ala. June 27, 2022).

**B.     Current proceedings**

Once the conviction and sentence became final, on March 17, 2022, the State of Alabama ("the State") filed a motion to set his execution date with the Alabama Supreme Court. On June

7, 2022, the Alabama Supreme Court granted the State's motion and set the execution for July 28, 2022.

On July 19, 2022, Plaintiff filed this case pursuant to 42 U.S.C. § 1983 as the seventh of several lawsuits pertaining to his upcoming execution.[1] In his present case, Plaintiff argues that the State through the named Defendants have violated his rights because they started the execution process even though Plaintiff has several appeals pending and no Certificate of Judgment has issued in Plaintiff's most recent cases. Plaintiff lists several actions he has filed in both state and federal court and notes that several are ongoing. He states that there is no binding Certificate of Judgment because the prior ones were all negated by his newest lawsuits. He argues that his continued lawsuits are him exercising the post-conviction remedies provided under Alabama law. More specifically, he asserts that he should have the right to elect nitrogen hypoxia as his method of execution. *See generally* Doc. 1.

The Court granted his motion to proceed *in forma pauperis*, and construed the complaint as also containing a motion for preliminary injunction. *See* Doc. 3. Defendants were ordered to file a response to the motion for preliminary injunction on or before July 22, 2022. *Id*. The Court also ordered Defendant Steve Marshall to address the issue of Certificate of Judgment that the Court had previously identified in Civ. Act. No. 1:22-cv-241-TFM, specifically what Certificate

---

[1] As of the date of this opinion, there were six additional cases filed in this court since June 22, 2022: *James v. Marshall*, Civ. Act. No. 1:22-cv-241 (S.D. Ala.); *James v. Fed. Def. of the Middle District of Ala.*, Civ. Act. No. 1:22-cv-242 (S.D. Ala.); *James v. Raybon*, Civ. Act. No. 1:22-cv-252 (S.D. Ala.); *James v. Raybon*, Civ. Act. No. 1:22-cv-253 (S.D. Ala.); *James v. Weller*, Civ. Act. No. 1:22-cv-270 (S.D. Ala.); and *James v. Pettway*, Civ. Act. No. 1:22-cv-271 (S.D. Ala.). The Court reviewed, addressed, and dismissed five of the cases within the two weeks and denied the preliminary injunction in the first case. This also does not include the numerous *pro se* cases he previously filed in the last two years. *See, e.g., James v. Jefferson County*, Civ. Act. No. 1:22-cv-33; *James v. Raybon*, Civ. Act. No. 1:21-cv-437; *James v. Marshall*, Civ. Act. No. 1:21-cv-453; *James v. Raybon*, Civ. Act. No. 1:21-cv-450; *James v. Raybon*, Civ. Act. No. 1:22-cv-152; *James v. Raybon*, Civ. Act. No. 1:20-cv-299.

of Judgment controls the trigger date for the election of nitrogen hypoxia as the method of execution. *Id*.

Defendants filed a joint response in opposition to the motion for preliminary injunction. *See* Doc. 5. Defendants noted that Plaintiff's direct criminal appeal ended on December 15, 2000 when the Alabama Supreme Court issued the Certificate of Judgment. *Id*. at 1-2. Defendants also argued that Plaintiff cannot establish the elements which would entitle him to a preliminary injunction. *Id*. at 3.

The request for a stay of execution by means of a preliminary injunction is ripe for the Court's review.

### III.   STANDARD OF REVIEW

The standard governing a stay of execution mirrors that for a preliminary injunction. *See Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011).

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). The party seeking the preliminary injunction bears the burden of establishing its entitlement to relief. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).

To obtain a preliminary injunction, the moving party must establish the following prerequisites: "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that

the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1262-63 (11th Cir. 2004); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (stating same four requirements). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org*, 788 F.3d at 1322 (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001)); *accord Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("A preliminary injunction is a drastic remedy and [the movant] bears the burden to clearly establish each of the four prerequisites."); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[G]ranting a preliminary injunction is the exception rather than the rule" and movant must clearly carry the burden of persuasion.). The moving party's failure to demonstrate a single element may defeat the request regardless of the party's ability to establish any of the other elements. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (failure to show irreparable injury); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (failure to establish substantial likelihood of success on the merits).

### IV.     DISCUSSION AND ANALYSIS

**A.     Backstory of Nitrogen Hypoxia in Alabama**

Though the complaint and request for injunction are thin on facts, the Court is well familiar with the backdrop of the litigation relating to the election (or non-election) of nitrogen hypoxia as an alternative method of execution in the state of Alabama. To start, Alabama law provides that lethal injection is the default method of execution. ALA. CODE. § 15-18-82.1(a).

i.      **The Midazolam Litigation and Authorization of Nitrogen Hypoxia**

Starting in 2012, several death row inmates filed nearly identical challenges to Alabama's lethal injection protocol which were ultimately consolidated into a single case and captioned as *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW (M.D. Ala. 2012). In that litigation, the inmates proposed nitrogen hypoxia as an alternative execution method.

On March 22, 2018, the Alabama Legislature amended the Alabama Code to add nitrogen hypoxia as an alternative to lethal injection in addition to the already existing alternative of electrocution established in 2002. *See* 2018 Alabama Laws Act 2018-353 (S.B. 272). Specifically, the Alabama Legislature amended Ala. Code §§ 15-18-82(a)-(b), 15-18-82.1(a)-(c), (f), (i)-(j) to encompass the addition of nitrogen hypoxia. The statute makes it clear that a death row inmate has one opportunity to select one of the alternative execution methods. ALA. CODE. § 15-18-82.1(b). That timeline is specifically set by the statute.

The amended code went into effect on June 1, 2018 which established the timing to make an election for nitrogen hypoxia as follows:

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date. If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

ALA. CODE. § 15-18-82.1(b)(2).

With the passage of this legislation, the addition of nitrogen hypoxia essentially mooted the ongoing litigation involved in the case *In re: Alabama Lethal Injection Protocol Litigation* as all the involved plaintiffs timely elected nitrogen hypoxia within the thirty-day window between June 1-30, 2018.  *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW, Docs. 427, 429.  As a result, the consolidated action was dismissed without prejudice.  *Id.*, Docs. 429, 430.

      ii.      **Distribution of election form by ADOC**

Over the course of the litigation that spawned from the addition of nitrogen hypoxia as an execution method, the following facts have been established and are undisputed.  On or about June 26, 2018, the Alabama Department of Corrections ("ADOC") distributed a nitrogen hypoxia election form to all death-sentenced inmates.  *See Smith v. Dunn*, 568 F. Supp. 3d 1244 (M.D. Ala. 2021); *Woods v. Dunn*, Civ. Act. No. 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267, at *7, 2020 WL 1015763, at *3 (M.D. Ala. Mar. 2, 2020).  The form was not drafted or created by ADOC or the State, but rather was drafted by an attorney in the Federal Defender's Office for the Middle District of Alabama.  *Id.*  During the thirty-day election period from June 1 to June 30, 2018, 48 inmates elected nitrogen hypoxia.  *See Dunn v. Price*, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019).

      iii.      **Lack of Execution Protocol Resulting in No Executions for Nitrogen Hypoxia**

When the Alabama Code was amended to add nitrogen hypoxia as a second alternative execution method, there was no protocol established for performing nitrogen hypoxia executions nor was there a deadline to create one.  Throughout the course of the litigation relating to nitrogen hypoxia, the State has yet to develop such a protocol.  As a result, the State has been unable to execute an inmate by nitrogen hypoxia.  Meanwhile, the State has proceeded with the execution of death row inmates who have completed their appeals and who did not elect nitrogen hypoxia.

### B.     James' Request for a Stay of Execution/Injunction

As Plaintiff proceeds *pro se*, the Court holds him to less stringent standards that formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, while we construe a *pro se* litigant's pleadings liberally, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). The Court further notes that the compressed timeline is necessary because of the upcoming execution date.

In each case Plaintiff has filed in the last several weeks, he makes slightly different allegations in each, but overlaps some claims and defendants. In this most recent lawsuit, he seems to be claiming that because he continues to file lawsuits in both state and federal court that the State is not permitted by law to execute him until all legal avenues have been exhausted and certificates of judgment have issued in each. Moreover, because he has filed additional lawsuits, the prior certificates of judgment have been negated which also means the State has violated his right to make an election of nitrogen hypoxia as his method of execution. Therefore, the State has violated the Fourteenth Amendment's due process and equal protection clause.

The only inquiry before the Court at this stage of the proceedings is whether James is entitled to a stay of his execution scheduled for July 28, 2022. As previously noted, the standard governing a stay of execution mirrors that for a preliminary injunction. Therefore, the Court looks to the four elements: (1) a substantial likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would

not disserve the public interest. Additionally, in a case where the party opposing the preliminary injunction is the government, the third and fourth elements merge. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (explaining that "where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest"). All elements must be met or the request for an injunction fails. Moreover, "'the first and most important question' regarding a stay of execution is whether the petitioner is substantially likely to succeed on the merits of his claims." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) *cert. denied sub nom. Price v. Dunn*, 139 S. Ct. 1542 (2019)

The Court will address each issue in turn, but starts with the idea that the continued filing of lawsuits negates the prior certificates of judgment and prohibits the ability of the State to seek Plaintiff's execution date from the Alabama Supreme Court. He offers no legal support for this argument. Moreover, the idea is simply not logical because then any death-row inmate could prevent his execution by merely filings lawsuit after lawsuit – creating a never ending loop of litigation in order to simply stall the execution date indefinitely. In *Hill v. McDonough*, the United States Supreme Court noted that equity weighs against a stay when "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." 547 U. S. 573, 584, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006) (quoting *Nelson v. Campbell*, 541 U.S. 637, 650, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004)). A stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. "Thus, a petitioner's complaint under § 1983 does not entitle him to an order staying his execution as a matter of course." *Jones v. Allen*, 485 F.3d 635, 638 (11th Cir. 2007). In short, the mere filing of a lawsuit does not create an automatic "pause" on the ability of the State to execute an inmate subject to a sentence of death.

Therefore, Plaintiff's first claim is unlikely to have success on the merits and is therefore not a basis to enter a preliminary injunction.

Next, the Court looks to Plaintiff's argument that his prior Certificates of Judgment have been negated. Plaintiff cites no support for such a statement and, in many respects, requires that same analysis as the "ongoing litigation" discussed above. There is no legal support that the mere filing of a lawsuit would negate a certificate of judgment because it would give a death-row inmate the power to simply stave off his execution by merely continuing litigation indefinitely.

The State notes that the issuance of certificates of judgment is controlled by Rule 41 of the Alabama Rule of Appellate Procedure. Rule 41 states as follows:

> (a) Date of issuance. The certificate of judgment of the court shall issue 18 days after the entry of judgment unless the time is shortened or enlarged by order.
>
>> (1) In the courts of appeals, the timely filing of an application for rehearing will stay the issuance of the certificate of judgment until disposition of the application unless otherwise ordered by the court. If the application is denied, the certificate of judgment s hall issue 18 days after entry of the order denying the application unless the time is shortened or enlarged by order.
>>
>> (2) In the Supreme Court, the timely filing of an application for rehearing will stay the issuance of the certificate of judgment until disposition of the application unless otherwise ordered by the court. If the application is denied by the Supreme Court, the certificate of judgment shall issue immediately unless in response to the first application the court substantially modified the original decision of the court, in which case, the certificate of judgment shall issue 18 days after entry of the order denying the application unless a second application is filed or the time is shortened or enlarged by order.
>
> (b) Stay of certificate of judgment pending petitions for certiorari to courts of appeals. The timely filing of a petition for certiorari in the Supreme Court shall stay the issuance of the certificate of judgment by the courts of appeals, which stay shall continue until the final dis position by the Supreme Court. Upon the filing of a copy of an or der of the Supreme Court denying the petition for certiorari, the certificate of judgment of the courts of appeals shall issue immediately. If the time for the issuance of the certificate of judgment shall have been shortened pursuant to subdivision (a) hereof, the courts of appeals shall grant such relief, upon motion, as

may be appropriate

ALA. R. APP. P. 41. Consequently, Defendants argue the certificate of judgment for Plaintiff's direct state criminal appeal was issued on December 15, 2000 – the day that the Alabama Supreme Court denied his petition for writ of certiorari. *See* Doc. 5 at 5; *see also Ex parte James*, No. 1991959, 2000 Ala. LEXIS 1511 (Ala. Dec. 15, 2000) (Alabama Supreme Court denial of certiorari). However, the Court also notes that Plaintiff filed a petition for a writ of certiorari to the United States Supreme Court which was denied on May 21, 2001. *See James v. Alabama*, 532 U.S. 1040, 121 S. Ct. 2005, 149 L. Ed. 2d 1007 (2001). Defendants fail to address the effect of the continued appeal to the United States Supreme Court. Ala. R. App P. 1 states "[t]hese rules govern appeals to the Supreme Court, the Court of Civil Appeals, and the Court of Criminal Appeals, and proceedings on petitions for writs or other relief which these courts or judges thereof are empowered to grant." It would appear that Rule 41 would apply only to the Alabama Supreme Court, yet it would also seem logical that the stay would extend to the United States Supreme Court appeal as that is the final appellate step available to any convicted person in a direct appeal. Regardless, the Court need not resolve that specific issue because whether the certificate of judgment was stayed until December 15, 2000 or May 21, 2001, the date has long since passed and Plaintiff cites no law indicating otherwise.

The Court also notes that Ala. R. App. P. 8(d)(1) provides that "[t]he supreme court shall at the appropriate time enter an order fixing a date of execution." Additionally, "[i]t is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies certiorari review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and [Plaintiff] should have foreseen that the execution date would likely be set promptly upon completion of collateral

review." *Jones*, 485 F.3d at 639 n.2.  Much like the *Jones* case, although Plaintiff suggests that the State acted inappropriately in seeking an execution date in this case, there is no evidence in this case that the State sought and obtained an execution date for James in bad faith.  Therefore, Plaintiff's claim that the State and the Alabama Supreme Court have improperly set his execution date does not appear to have merit which is required for the issuance of a preliminary injunction.

Therefore, the Court returns to the final issue, whether Plaintiff should be able to now make an election of nitrogen hypoxia on the eve of his execution date – a common thread being asserted in his recent lawsuits.  Much like in his prior lawsuits, Plaintiff still fails to meet his burden – and to be clear, it is HIS burden, not the Defendants, to establish the elements of a preliminary injunction.

As discussed above, Ala. Code § 15-18-82.1(b)(2) establishes the timeline for election.

> "The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date."

ALA. CODE § 15-18-82.1(b)(2).  The State argues that James was required to make a written election within thirty days of June 1, 2018 because the Certificate of Judgment was effective December 15, 2000.  Though the Court discussed above some issues with whether the effective date is December 15, 2000 or May 21, 2001, the Alabama statute controlling the election of nitrogen hypoxia is perfectly clear.  It states, "within 30 days after the certificate of judgment pursuant to a decision by the **Alabama Supreme Court** affirming the sentence of death."  ALA. CODE § 15-18-82.1(b)(2) (emphasis added).  Therefore, it would appear the date is December 15, 2000.  Yet, even if it were stayed until May 21, 2001, it would make no difference in this case as the election date would be June 1-30, 2018 either way.  Plaintiff did not make an election within

that timeframe. Though he may have still been pursing post-conviction appeals, it does not change the fact that his election was due within that time period. Therefore, his claims are time barred.

To the extent that the Court is in error on the correct Certificate of Judgment, it still remains Plaintiff's burden to establish the elements of a preliminary injunction – including success on the merits. Even considering a potentially more expansive view of the deadline, it is clear that the federal habeas review was completed when his petition for writ of certiorari was denied by the United States Supreme Court on March 1, 2021. Using the general *Jones* analysis, this is the point in time when a death-row inmate should realize an execution date could be set at any time. *Jones*, 485 F.3d at 639 n.2. Therefore, even by that generous view, James should have realized that he could bring these claims at that point at the latest. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Gomez v. United States Dist. Court for N. Dist. of Cal.,* 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992); *see also Dunn*, --- U.S. ---, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019) (quoting *Gomez*); *Hill v. McDonough*, 547 U. S. 573, 584, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006) (equity weighs against a stay when "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay").

Further, to the extent Plaintiff seeks to argue again that he did not realize that the election or non-election of nitrogen hypoxia would potentially affect when the State might execute him due to the lack of protocol for nitrogen hypoxia executions, it is clear those claims fail under binding precedent from the Eleventh Circuit. *See Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019) *cert. denied sub nom. Price v. Dunn*, 139 S. Ct. 1542 (2019). The Court is bound by the Eleventh Circuit's analysis in *Price* that James' equal protection claims fail as a matter of law and he cannot succeed on the merits which precludes the issuance of a stay of execution by

preliminary injunction. As a result, the Court need not analyze any of the remaining elements. The Court takes judicial notice of its prior opinion issued in Civ. Act. No. 1:22-cv-241 (Doc. 10) which discusses *Price* and its analysis in greater detail. That matter is currently on appeal to the Eleventh Circuit and therefore the Court is deprived of additional jurisdiction over those issues to the extent they overlap in this case.

A preliminary injunction is considered "an extraordinary and drastic remedy," and James bears "the burden of persuasion" to clearly establish each of these elements. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks omitted). Since James fails to establish that his claims have substantial likelihood of success on the merits, the Court need not evaluate the remaining elements.

## V.   CONCLUSION

Based on the above, Plaintiff has not carried his burden of persuasion for an injunction to issue on a stay of execution. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. 1) is **DENIED**.

The Clerk of Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Plaintiff by overnight mail. Further, the Clerk of Court is **FURTHER DIRECTED** to send a copy to the Warden by either electronic mail or facsimile with the instructions that a copy of this Memorandum Opinion and Order be given to the Plaintiff immediately upon receipt.

**DONE** and **ORDERED** this 25th day of July 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE